**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Jimmy JACOB, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 6, 2004.

Filed Jan. 24, 2005.

Edward M. Zawrotny, Philadelphia, for appellant.

Kevin J. McCloskey, Asst. Dist. Atty., Norristown, for Com., appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Jimmy Jacob, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his conviction for criminal attempt to commit involuntary deviate sexual intercourse ("attempted

IDSI")[1] with a twelve-year-old girl. Appellant asks us to evaluate whether the Commonwealth presented sufficient evidence to establish he took a substantial step towards commission of the crime. We hold the evidence at trial sufficiently established Appellant took a substantial step towards commission of IDSI, where he engaged in multiple sexually illicit internet communications with a purported twelve-year-old girl, planned to meet the girl the next day, engaged in a telephone conversation in which he offered to "teach" the girl oral sex during the scheduled meeting, and arrived at the prearranged location with condoms in his vehicle. Accordingly, we affirm Appellant's judgment of sentence.

¶ 2 The relevant facts and procedural history of this case are accurately set forth in the trial court opinion as follows:

While temporarily assigned as a Montgomery County Detective, Officer Colleen Troxel posed as a twelve-year-old girl on an internet "chat room" serving the Philadelphia area. Using the screen name "Caitybear90," she engaged in correspondence with [Appellant, who used the screen name "Intrigue6178,"] over a two-day period, October 30–31, 2002.

Defendant's Exhibit 1 is a transcript of the conversations between Caitybear and [Appellant]. The transcript shows that Caitybear introduced herself as a 12–year–old girl from Horsham, and [Appellant] introduced himself as a 24–year–old from Northeast Philadelphia. During the first conversation, [Appellant] soon asked if Caitybear would like to "cuddle and kiss," and when she replied that she had never kissed a boy, asked if he could be her first. [Appellant] persisted along this line, asking if Caitybear could spend time with him

that day, and telling her he could teach her how to kiss.

During the next conversation, [Appellant] asked whether Caitybear's chest was developed, and remarked, "I know you're a virgin, do you mind that I'm not?" When Caitybear replied that she did not, he responded "I could teach you that one day, too." They arranged to meet at his "place" the next day, and [Appellant] asked, "well what else? [sic] do you want me to teach you [sic] how to go down on a guy?" When Caitybear asked what he meant, he explained, "you are playing with his penis...and sucking on it like a lollipop." [Appellant] also described cunnilingus and told her it was something he could "teach" her.

[Appellant] then arranged to speak to "Caitybear" on Officer Troxel's cellular telephone. During that conversation, he asked Caitybear to keep their relations secret, because "he could go to jail." He also asked if he could teach her about sex, specifically, "Could I teach you how to go down on a guy tomorrow?" He also gave an accurate physical description of himself and the automobile he would be driving.

The two arranged to meet the next day at the Village Mall in Horsham. When he arrived at the mall the next day, he was arrested. The arresting officers obtained a search warrant, seized the computer he had used during the chat sessions, and found fragments of files containing remnants of the recorded conversations between [Appellant] and Caitybear. The police searched [Appellant's] automobile and discovered computer-generated directions from [Appellant's] workplace to the mall, three condoms, a roll of duct tape and a bag of candy.

---

1. 18 Pa.C.S.A. §§ 901; 3123.

(Trial Court Opinion, dated May 24, 2004, at 1–2) (citations to transcript omitted).

¶ 3 The police charged Appellant with IDSI, attempted IDSI, unlawful contact or communications with a minor ("UCM"),[2] attempted UCM, indecent assault,[3] attempted indecent assault, corruption of a minor,[4] and attempted corruption of a minor. Appellant waived his preliminary hearing in exchange for the Commonwealth's withdrawal of the IDSI, attempted UCM, indecent assault, and corruption of a minor counts. Following a bench trial, the court convicted Appellant of the remaining counts—attempted IDSI, UCM, attempted indecent assault, and attempted corruption of a minor. The court sentenced Appellant to two to four years' imprisonment on the attempted IDSI count. The court denied Appellant's request for reconsideration of sentence. Appellant subsequently filed this timely appeal of the judgment of sentence on his attempted IDSI conviction.

¶ 4 Appellant raises the following issue for our review:

> THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE DID NOT SUPPORT TRIAL COURT FINDING APPELLANT GUILTY OF ATTEMPTED [IDSI] BEYOND A REASONABLE DOUBT.

(Appellant's Brief at 4).

¶ 5 Appellant challenges the sufficiency of the evidence to convict him of attempted IDSI. Specifically, Appellant argues he did not take a significant overt act to satisfy the attempt element of the crime. Appellant frames the issue as "whether or not driving to a location at a prearrange [sic] time constitutes a substantial step towards the completion of the criminal act...." (Appellant's Brief at 10). Appellant believes the facts of his case are distinguishable from those in *Commonwealth v. Zingarelli*, 839 A.2d 1064 (Pa.Super.2003), *appeal denied*, —— Pa. ——, 856 A.2d 834 (2004), and *Commonwealth v. Spetzer*, 722 A.2d 702 (Pa.Super.1998), *vacated on other grounds*, 572 Pa. 17, 813 A.2d 707 (2002), two cases where this Court addressed sufficiency of the evidence challenges to attempted IDSI convictions. Appellant contends the defendants in *Zingarelli* and *Spetzer* took additional steps toward the commission of IDSI that he did not take. Appellant concludes the Commonwealth presented insufficient evidence to convict him of attempted IDSI. We disagree.

■ ¶ 6 When reviewing a challenge to the sufficiency of the evidence:

> [W]e must determine whether, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. The established facts and circumstances do not have to be absolutely incompatible with the accused's innocence, but any doubt is for the fact finder unless the evidence is so weak and inconclusive that no probability of fact can be drawn from the totality of the circumstances as a matter of law.

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa.Super.2003) (internal citations omitted).

---

2. 18 Pa.C.S.A. § 6318.

3. 18 Pa.C.S.A. § 3126.

4. 18 Pa.C.S.A. § 6301(a).

¶ 7 A person commits involuntary sexual intercourse with a child when he engages in deviate sexual intercourse with a complainant who is less than thirteen years of age. 18 Pa.C.S.A. § 3123(b).[5] The Crimes Code's definition of "deviate sexual intercourse" includes oral sex. 18 Pa.C.S.A. § 3101. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

¶ 8 In *Zingarelli, supra,* a police officer posed as a fifteen-year-old girl on an internet chat room, where she conversed with the appellant several times over the course of two days. *Id.* at 1067–68. The appellant gave her his telephone number and expressed his desire to meet her and to teach her how to perform oral sex. *Id.* The appellant expressed his concern about the illegality of meeting with her, but nonetheless arranged to pick her up for a "date" the following day. *Id.* The police arrested the appellant after he arrived at the prearranged location, and found a hotel room key in his pocket and an unopened box of condoms in his car. *Id.* The police also discovered a bottle of wine at the hotel room the appellant had rented. *Id.* Following a bench trial, the court found the appellant guilty of, *inter alia,* attempted IDSI. *Id.* An appeal to this Court followed.

¶ 9 On appeal, the appellant argued he only engaged in "preparatory acts" that did not amount to criminal attempt to commit IDSI. *Id.* at 1069. This Court reasoned the appellant's acts of renting a motel room, purchasing wine and condoms, packing an overnight bag, and driving from Pittsburgh to Tionesta to meet his imaginary Lolita for the purpose of sexual intercourse were sufficient to sustain the appellant's attempted IDSI conviction. *Id.* at 1071.

¶ 10 In *Spetzer, supra,*[6] the appellant repeatedly and forcibly demanded his wife plan a sexual rendezvous between him and his minor stepdaughters. *Id.* at 705. The wife contacted the police, who arranged a sting operation with the wife's cooperation. *Id.* The wife phoned the appellant and told him the stepdaughters would meet him at a hotel room for a sexual encounter. *Id.* The appellant subsequently rented a hotel room and waited there, with a box of condoms, for his stepdaughters. *Id.* at 715. The police arrested the appellant at the hotel room, and a jury found him guilty of attempted IDSI and related charges, including attempted rape by compulsion. *Id.*

¶ 11 On appeal, the appellant claimed he did not take a substantial step towards commission of his attempt-related crimes. *Id.* This Court disagreed, determining the appellant's actions of renting a hotel room and waiting there for his minor stepdaughters with a box of condoms constituted a substantial step toward commission of the consensual sex-related crimes. *Id.* However, this Court held there was insufficient evidence of the appellant's attempt to commit the non-consensual sex crimes, because the wife led the appellant to believe his stepdaughters were voluntarily agreeing to have sex with him. *Id.* at 715–16.

■ ¶ 12 Presently, the trial court addressed Appellant's challenge as follows:
The telephone conversation between [Appellant] and Officer Troxel is the

---

5. At the time charges were filed against Appellant, the crime of involuntary deviate sexual intercourse with a child was codified at 18 Pa.C.S.A. § 3123(a)(6).

6. Although *Spetzer* is not binding precedent due to the fact the Pennsylvania Supreme Court overruled it on other grounds, we nevertheless find its reasoning instructive.

most damning evidence against [Appellant]. His expressed intent to have oral sex with Caitybear on November 1, 2002 is more indicative of his true intentions than his internet conversations in which he proposed having sexual relations "in time" and his self-serving tale to the police that he planned only to warn her of the dangers of meeting strangers through the internet. [Appellant's] admonition to Caitybear to keep their plans secret because "he could go to jail" shows that he planned to undertake a sexual act with her.

\* \* \*

In [*Zingarelli, supra*], the [appellant] "had rented a motel room, purchased wine and condoms, packed an overnight bag, and driven from Pittsburgh to Tionesta in order to meet Kathy–PA for the purpose of sexual intercourse." *Id.* at 1071. The facts of this case are similar in that [Appellant] drove to the pre-arranged meeting site, and condoms were found in his car.

This court must concede that the distance driven was shorter in this case, and [Appellant] did not pack an overnight bag, and no motel room was rented. However, the lack of an overnight bag and motel room rental are a consequence of [Appellant's] plan, which was for the pair to spend the day at [Appellant's] "place." The question then becomes whether [Appellant's] act of driving to the meeting location at the prearranged time constitutes a substantial step toward the completion of the criminal act.

Although no reported appellate opinions address the issue of what constitutes a

substantial step toward involuntary deviate sexual intercourse,[7] those of other jurisdictions provide guidance as to the outer boundaries of this concept. "[T]he more clearly the intent to commit the offense is shown, the less proximate the acts need to be to consummation of the crime." *Hatch v. [Superior Court] People*, 80 Cal.App.4th 170, 187–88, 94 Cal. Rptr.2d 453 (2000). "The plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the over act requirement." *Id.* at 188, 94 Cal.Rptr.2d 453. Moreover, "child molesting is a sufficiently serious crime to justify drawing a fairly early line to identify and sanction behavior as an attempt." *Ward v. State*, 528 N.E.2d 52, 54 (Ind.1988).

In this case, [Appellant] pursued internet conversations with a person he believed to be a 12–year–old girl. He introduced sexual topics into the conversation. He told her he would teach her fellatio, cunnilingus and sexual intercourse. He arranged a meeting with her. He initiated a telephone conversation with a person he believed to be the 12–year–old girl and asked her if he could "teach" her fellatio when they met. He gave an accurate physical description of himself and his automobile so his intended victim would be able to find him. He obtained driving directions to the meeting place and appeared on time at the agreed location. Now he argues that this evidence leaves a reasonable doubt as to whether he intended to carry out his plans. [The trial] court submits it does not.

7. Although the trial court states this Court has not previously considered this issue, we note the court relies on *Zingarelli, supra,* where this Court directly addressed whether driving to a pre-arranged location can be considered as evidence of a substantial step towards commission of IDSI.

 

(Trial Court Opinion at 3–6). We agree with the trial court that the present case is substantially similar to *Zingarelli, supra.* The fact that the *Zingarelli* appellant drove a farther distance than Appellant and rented a hotel room for an overnight stay is irrelevant here, due to Appellant's proximity to his imaginary victim and his expressed desire to take her back to his "place," and to have her back at school by the end of the day. (Transcript of Internet Communications at 3–4; R.R. at 244a–45a).

¶ 13 The trial court's brief discourse on the treatment of attempted IDSI in other jurisdictions is also instructive. To the trial court's discussion we add the case of *People v. Scott*, 318 Ill.App.3d 46, 251 Ill. Dec. 630, 740 N.E.2d 1201 (2 Dist.2000), *appeal denied*, 194 Ill.2d 579, 254 Ill.Dec. 316, 747 N.E.2d 356 (2001), in which the defendant used the internet to plan a sexual rendezvous with whom he believed was a twelve-year-old boy. On appeal after the defendant's conviction for the Illinois equivalent of attempted IDSI, the appellate court held:

> [T]he defendant completed a substantial step towards commission of predatory sexual assault. The defendant engaged in two distinct acts leading to the commission of sexual conduct with [the victim]. The first was the Internet communication in which he enticed [the victim] to meet with him. The second was driving to the agreed-upon location for the meeting.

*Id.* at 1208.

¶ 14 Based on the foregoing, we hold the Commonwealth presented sufficient evidence to establish Appellant took a substantial step towards committing IDSI, based on his multiple sexually illicit internet communications with a purported twelve-year-old girl, his subsequent telephone conversation in which he offered to "teach" her oral sex during a meeting he scheduled for the next day, and his timely arrival at the prearranged location with condoms in his vehicle. *See Zingarelli, supra; Lyons, supra; Hatch, supra; Scott, supra.* Accordingly, we affirm Appellant's judgment of sentence for attempted IDSI.

¶ 15 Judgment of sentence affirmed.