**Commonwealth v. Sunday**

C.P. of Lawrence County, no. 1208 of 2009.

*Kathleen Fee-Baird, assistant district attorney,* for Commonwealth.
*David H. Acker,* for defendant.

COX, *J.,* June 21, 2010—Before the court for disposition is the omnibus pretrial motion filed on behalf of the defendant Joshua Scott Sunday, in which he argues the Commonwealth failed to establish a prima facie case that the defendant committed criminal attempt to commit involuntary deviate sexual intercourse, criminal attempt to commit sexual assault, unlawful contact with a minor, criminal attempt to commit indecent assault, indecent assault, harassment and corruption of minors.

On October 23, 2009, the victim, A.M., was baby-sitting for her brother[1] at his home when she met the defendant, who lived near her brother's residence. A.M. was born on March 27, 1996, and at the time of these incidents she was 13 years old. The defendant was 26 years old at that time. The defendant entered the residence while the victim's brother was still present. The victim initially met the defendant while she was using her

---

1. The victim's brother's identity was omitted to protect the victim's identity.

brother's computer and she had a picture of her friend on the screen. The defendant indicated that he wanted to "get together" with the victim's friend and offered to drive the victim to her friend's residence. It must be noted that the defendant was informed of the victim's age when they first met.

Although it is unclear as to the sequence of events, it appears that the interactions between the victim and the defendant are as follows: At the preliminary hearing, A.M. explained that the defendant made her feel uncomfortable on several occasions. During the first occurrence, the defendant asked A.M. three times, twice as he was leaving the residence, if she wanted to play a game called "just the tip." A.M was unaware of what that phrase meant at the time the defendant made the request. She subsequently discovered that it meant he wanted to place his penis in her mouth. On another occasion, while sitting together on the front porch of A.M.'s brother's residence, the defendant placed A.M.'s leg on his chest, pulled up her pant leg and ran his hand across her bare leg. A.M. also testified that the defendant stated, you shaved, you're a proper woman or proper girl. Additionally, the defendant removed A.M.'s sock and told her that he had a foot fetish. In response, A.M. immediately pulled her foot away from the defendant and she walked into the house. A.M. also recalled that the defendant pulled up her pant leg and asked if he could have a taste, which indicated that he wanted to perform oral sex on her. It was not fully developed at the preliminary hearing whether these incidents occurred on the same day. However, A.M. testified at the preliminary hearing that the defendant did

not try to physically force her to engage in sexual activity.

The defendant was subsequently charged with criminal attempt to commit involuntary deviate sexual intercourse with a person less than 16 years of age,[2] criminal attempt to commit sexual assault,[3] corruption of minors,[4] unlawful contact with a minor,[5] criminal attempt to commit indecent assault-person less than 16 years of age,[6] indecent assault-person less than 16 years of age[7] and harassment.[8] On November 12, 2009, a preliminary hearing was held before Magisterial District Judge Melissa A. Amodie. The charges were bound over to this court and the defendant now contends that the Commonwealth failed to establish a prima facie case for each count on the information.

Where a criminal defendant seeks to challenge the sufficiency of the evidence presented at his preliminary hearing, he may do so by filing a writ of habeas corpus. *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589 (1991). "The purpose of a preliminary hearing is to avoid the incarceration or trial of a defendant unless there is sufficient evidence to establish a crime was committed and the probability the defendant could be connected with the crime." *Commonwealth v. Fox,* 422 Pa. Super.

---

2. 18 Pa.C.S. §901(a).
3. 18 Pa.C.S. §901(a).
4. 18 Pa.C.S. §6301(a)(1).
5. 18 Pa.C.S. §6318(a)(1).
6. 18 Pa.C.S. §901(a).
7. 18 Pa.C.S. §3126(a)(8).
8. 18 Pa.C.S. §2709(a)(4).

224, 234, 619 A.2d 327, 332 (1993) (quoting *Common-wealth v. Tyler,* 402 Pa. Super. 429, 433, 587 A.2d 326, 328 (1991)).

In evaluating an accused's entitlement to pretrial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged. *Commonwealth v. Hock,* 556 Pa. 409, 728 A.2d 943 (1999). In a pretrial habeas corpus proceeding, as in a preliminary hearing, the Commonwealth has the burden of establishing a prima facie case, offering some proof to establish each material element of the offense as charged. *Commonwealth v. Owen,* 397 Pa. Super. 507, 580 A.2d 412 (1990). This does not mean that the prosecution must prove the accused guilty beyond a reasonable doubt, but rather, the prosecution must establish "sufficient probable cause" that the accused has committed the offense. *Commonwealth v. Prosdocimo,* 331 Pa. Super. 51, 479 A.2d 1073 (1984). The standard in determining whether a defendant is properly held for court is: (a) that the record reveals a prima facie showing that a crime or crimes have been committed; and (b) that the defendant was in some way legally responsible. *Liciaga v. Court of Common Pleas of Lehigh County,* 523 Pa. 258, 566 A.2d 246 (1989). A prima facie case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. *Commonwealth v. Fountain,* 811 A.2d 24 (Pa. Super. 2002).

The Commonwealth establishes a prima facie case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa. Super. 2001). The weight and credibility of the evidence is not a factor at this stage, the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. *Id.* As a result of the Commonwealth bearing the minor burden of establishing a prima facie case, a witness' credibility is not an issue at a preliminary hearing. *Commonwealth v. Fox,* 422 Pa. Super. 225, 619 A.2d 327 (1993). The committing magistrate is precluded from considering the credibility of a witness who is called upon to testify during the preliminary hearing. *Liciaga, supra.* Neither is it for the court ruling on the motion for writ of habeas corpus to assess the credibility of the witnesses presented at the preliminary hearing. *Commonwealth v. Carmody,* 799 A.2d 143 (Pa. Super. 2002).

The defendant is charged with several counts of criminal attempt, which is defined by 18 Pa.C.S. §901. That statute states:

"(a) *Definition of attempt*—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime."

The test to determine what constitutes a substantial step broadens the scope of attempt liability by concentrating on the acts of the defendant and not the acts remaining to be completed before the actual commission of the crime. *Commonwealth v. Gilliam,* 273 Pa. Super.

586, 589-90, 417 A.2d 1203, 1205 (1980) (citing *Commonwealth v. Howard,* 248 Pa. Super. 246, 375 A.2d 79 (1977)).

The first charge of criminal attempt is involuntary deviate sexual intercourse, which is defined as:

"(a) *Offense defined.*—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant: . . .

"(7) who is less than 16 years of age and the person is 4 or more years old." 18 Pa.C.S. §3123(a)(7).

Deviate sexual intercourse means, "Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S. §3101.

In *Commonwealth v. Jacob,* 867 A.2d 614 (Pa. Super. 2005), the appellant was charged with criminal attempt to commit involuntary deviate sexual intercourse arising from sexually explicit internet communications with a purported 12-year-old girl. In that case, a county detective posed as the 12-year-old girl on an internet chat room for the Philadelphia area, in which she met the appellant. He soon asked if the girl would like to cuddle and kiss to which she replied that she never kissed a boy. The appellant asked to be her first. The next conversation consisted of the appellant asking whether the girl was upset that he was not a virgin. He also stated that he could teach her that one day and they planned a meeting at his

414

residence. The following day, the appellant inquired as to whether the girl wanted him to teach her "how to go down on a guy." Additionally, he described cunnilingus to the girl and stated that he could teach her that as well. The appellant subsequently organized a meeting with the girl at a local mall and he gave an accurate description of himself. Police officers obtained a search warrant, seized the appellant's computer and found remnants of the conversations. They also searched the appellant's vehicle and discovered computer-generated directions from the appellant's place of employment to the mall, three condoms, a roll of duct tape and a bag of candy. The appellant was arrested and charged with several offenses, including criminal attempt to commit involuntary deviate sexual intercourse. He was convicted of attempted involuntary deviate sexual intercourse and filed a timely appeal challenging the sufficiency of the Commonwealth's evidence.

The appellant claimed he did not take a substantial step toward the commission of his attempt-related crimes. The *Jacob* court noted that the more clearly the intent to commit the offense is proven the less proximate the acts need to be to the actual completion of the crime. *Id.,* 867 A.2d at 618 (citing *Hatch v. [Superior Court] People,* 80 Cal.App.4th 170, 187-88, 94 Cal. Rptr.2d 453 (2000)). Additionally, the court explained, "child molesting is a sufficiently serious crime to justify drawing a fairly early line to identify and sanction behavior as an attempt." *Id.,* 867 A.2d at 618 (quoting *Ward v. State,* 528 N.E.2d 52, 54 (Ind. 1988)). The *Jacob* court reasoned that the appellant introduced sexually explicit topics, including fellatio, cunnilingus and sexual intercourse, to

a purported 12-year-old girl and he arranged a meeting with the girl. *Id.,* 867 A.2d at 619. The appellant obtained directions to the mall and appeared at the location on time. *Id.* The court held that the appellant performed a substantial step towards completing the offenses charged and the Commonwealth presented sufficient evidence to support a conviction for criminal attempt to commit involuntary deviate sexual intercourse. *Id.,* 867 A.2d at 619.

Next, the defendant is charged with criminal attempt to commit sexual assault. The crime of sexual assault has been defined as, "Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. §3124.1.

In *Commonwealth v. Spetzer,* 722 A.2d 702 (Pa. Super. 1998), *rev'd on other grounds,* 572 Pa. 17, 813 A.2d 707 (2002), the appellant was convicted of criminal attempt to commit sexual assault because he made arrangements to have sexual intercourse with his stepdaughters, which included procuring a hotel room and a box of condoms. The appellant argued that there was insufficient evidence to establish that he performed a substantial step in committing sexual assault. The *Spetzer* court reasoned, "Appellant believed the planned sexual encounter was underway, made efforts to facilitate the encounter, and went as far as to rent a hotel room and wait with a box of condoms." *Id.,* 722 A.2d at 715. The court considered

that to be a substantial step toward the commission of the crime. *Id.* Additionally, the Commonwealth presented intercepted telephone calls which indicated that the appellant intended to engage in statutory sexual assault of his stepdaughters. *Id.,* 722 A.2d at 716. Therefore, the *Spetzer* court held that the Commonwealth presented sufficient evidence to establish the charge of criminal attempt to commit sexual assault. *Id.*

The defendant is also charged with criminal attempt to commit indecent assault and indecent assault. The crime of indecent assault is defined as:

"(a) *Offense defined.*—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

"(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S. §3126(a)(8).

Indecent contact is, "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. §3101.

In *Commonwealth v. White,* 232 Pa. Super. 176, 335 A.2d 436 (1975), the appellant approached the victim, an 8-year-old girl, while she was playing outside of her house and shone a flashlight in her face. He also placed

his hand over her mouth and carried her back to an abandoned house located on the same block as the victim's residence. The appellant held the victim against a wall by her shoulders and proceeded to pull her skirt up approximately six inches. The victim saw a neighbor walking near the abandoned house and she screamed for his help. When the neighbor approached the house, the appellant immediately fled. The appellant was convicted of attempted indecent assault and he filed an appeal, in which he argued that the evidence was insufficient to constitute that crime. The Pennsylvania Superior Court affirmed the conviction and reasoned:

"[T]he appellant's act of carrying the complainant to the back of an abandoned house; holding her shoulders, threatening to grab her, and lifting her skirt up approximately six inches, all of which occurred against the complainant's will, demonstrates that the appellant had the requisite intent to commit, at the minimum, an indecent assault and, furthermore, had taken substantial steps towards the completion of the reprehensible act." *Id.,* 232 Pa. Super. at 181, 335 A.2d at 438.

In the case sub judice, A.M., who was a 13-year-old female at the time of the incidents, was baby-sitting for her brother when she met the defendant, who was 26 years old. While A.M. was using her brother's computer, the defendant approached her and noticed a picture of her friend on the computer screen. He indicated that he wanted to "get together" with A.M.'s friend and he offered to drive A.M. to the friend's residence. On several other occasions, the defendant made A.M. uncomfortable as well. First, he asked A.M. three times, twice as he was

leaving the victim's brother's residence, if she wanted to play a game called "just the tip." A.M. subsequently discovered that it meant he wanted to place his penis in her mouth. On another occasion, the defendant and A.M. were seated on the front porch and the defendant placed A.M.'s leg on his chest. He then pulled up her pant leg and ran his hand across her leg. A.M. testified at the preliminary hearing that the defendant stated, you shaved, you're a proper woman or proper girl. The defendant also removed A.M.'s sock and told her that he had a foot fetish. In response, A.M. immediately pulled her foot away from the defendant and she walked into the residence. A.M. also recalled that the defendant pulled up her pant leg and asked if he could have a taste, which indicated that he wanted to perform oral sex on her.

In regards to the charge of criminal attempt to commit involuntary deviate sexual intercourse, it appears the Commonwealth presented sufficient evidence that the defendant performed a substantial step to perpetrate that offense. The defendant clearly introduced sexually explicit topics, which included fellatio, cunnilingus and his apparent foot fetish. He also indicated his desire to perform sexual acts on A.M., which is similar to the *Jacob* case. Moreover, the defendant was in the victim's brother's residence with A.M. and there were no other adults present when the aforementioned incidents occurred. Additionally, the *Jacob* court explained that child molesting is a serious offense and the line to identify and sanction conduct occurs very early on in an encounter, such as the incidents in the current matter. The defendant's attempts to convince A.M. to have sexual contact with

him were sufficient to establish a prima facie case for attempted involuntary deviate sexual intercourse in accordance with the court's decision in *Jacob.*

Also, the defendant is charged with criminal attempt to commit sexual assault. The defendant made several attempts to convince A.M. to have sexual contact with him. The encounters occurred at the victim's brother's residence where A.M. was alone with the defendant while she was baby-sitting. The defendant tried to take advantage of that situation to coax A.M. into having sexual relations with him. His attempts included asking A.M. to play "just the tip", he also pulled up her pant leg, he touched her bare leg and noticed that she shaved her legs. Moreover, the defendant pulled up A.M.'s pant leg and asked if he could have a taste indicating that he wanted to perform oral sex on her. As in the *Spetzer* case, the defendant had the opportunity to convince A.M. to have sexual contact with him and he attempted to capitalize on that opportunity, but was unsuccessful. Also, the defendant made several comments indicating that he wanted to have sexual contact with A.M., similar to the telephone conversations in *Spetzer.* Therefore, the Commonwealth has established a prima facie case to support the charge of criminal attempt to commit sexual assault in accordance with the court's ruling in *Spetzer.*

The defendant is charged with criminal attempt to commit indecent assault as well. On several occasions, the defendant pulled up A.M.'s pants to touch her bare leg. He also removed A.M.'s sock and informed her that he had a foot fetish. Moreover, he pulled up her pant leg and asked if he could have a taste, which indicated that

he wanted to perform oral sex on A.M. Again, it must be noted that the defendant and A.M. were left alone in the residence when these incidents occurred. In *White,* the appellant moved the victim to an abandoned house and pulled up her skirt approximately six inches. In the current matter, the defendant and A.M. were already alone in the residence and the defendant moved and manipulated A.M.'s clothing to entice her to engage in sexual contact with him. As a result, the Commonwealth has presented sufficient evidence to establish a prima facie case that the defendant committed attempted indecent assault.

The defendant is charged with unlawful contact with a minor as well. Unlawful contact with a minor is set forth in 18 Pa.C.S. §6318, which states:

"(a) *Offense defined.*—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

"(1) Any of the offenses enumerated in chapter 31 (relating to sexual offenses)."

In *Commonwealth v. Oliver,* 946 A.2d 1111 (Pa. Super. 2008), the appellant was convicted by a jury of two counts of involuntary deviate sexual intercourse and four counts of unlawful contact with a minor arising out of several incidents involving his girlfriend's daughters. The appellant resided with his girlfriend, and her daugh-

ters also resided with appellant and their mother during the summer months. One of the daughters, who was 11 or 12 years old, entered her mother's bedroom to watch television while her mother was sleeping. The appellant was reclining on the bed at that time. The child sat at the end of the bed and the appellant nudged her back with his foot and pulled the blankets below his bellybutton. The appellant also pointed toward his penis and raised his eyebrows. The child looked away and continued to watch television. The appellant nudged her again with his foot and the child left the bedroom. On another occasion, the child asked the appellant for a dollar and he replied that she could have had more if she "would have did [sic] this for me . . . You know what I mean, or am I too big for you?" On appeal the appellant argued that the evidence adduced at trial was insufficient to sustain a conviction for unlawful contact with a minor.

The *Oliver* court explained that the child was clearly a minor as she was under the age of 18 and the appellant clearly contacted her through his words and gestures. *Id.* 946 A.2d at 1114. The court also concluded that the contact was undertaken for the purpose of engaging in prohibited activity as the appellant nudged the child with his foot, pulled the blankets below his bellybutton and pointed toward his penis. *Id.* The appellant also informed the child that she could have received $40 "'if [she] would have did [sic] this for [him],' adding, 'Or am I too big for you?'" *Id.* Thus, the *Oliver* court held that the evidence was sufficient to support a conviction for unlawful contact with a minor because the appellant made gestures and statements for the sole purpose of getting the child to perform oral sex. *Id.*

In the case currently before the court, the defendant made contact with A.M. in furtherance of his desire to have sexual contact with her. First, the defendant asked A.M. if she wanted to play "just the tip", which was a way of asking her if she wanted to perform oral sex on the defendant. Additionally, the defendant pulled up A.M.'s pants and touched her leg, which led to the defendant telling A.M. that she is a proper woman or proper girl because she shaves her legs. On a separate occasion, the defendant pulled up A.M.'s pant leg and asked her if he "could have a taste," which indicated that he wanted to perform oral sex on her. According to the *Oliver* decision, an adult making sexual comments and gestures to solicit sexual contact from a child is sufficient to support the charge of unlawful contact with a minor. In *Oliver,* the appellant nudged the victim with his foot and made gestures, which included pulling the blankets down below his bellybutton and pointing toward his penis. Similarly, the defendant made physical contact with A.M. to gain her attention and he made comments indicating that he wanted to have sexual contact with her. Thus, the Commonwealth has presented sufficient evidence to establish that the defendant had unlawful contact with a minor.

Next, the defendant is charged with the crime of harassment. "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S. §2709(a)(4).

In *Commonwealth v. Duncan,* 239 Pa. Super. 539, 363 A.2d 803 (1976), the appellant approached the victim as she was lying on a couch in the lounge area of a dormitory. While in close proximity to the victim, the appellant made repeated requests that the victim permit him to engage in an illegal sexual act. The victim asked him to leave on several occasions, but he persisted. After being asked to leave three or four times, the appellant finally stopped making the requests. It must be noted that the victim made it obvious from the beginning that she wanted the appellant to leave her alone. The *Duncan* court explained that "a defendant's intent to commit a criminal act may be inferred from his words or actions when viewed in the light of all the attendant circumstances." *Id.,* 239 Pa. Super. at 543-44, 363 A.2d at 806 (citing *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A.2d 195 (1971); *Commonwealth v. Tyrell,* 405 Pa. 210, 174 A.2d 852 (1961); and *Commonwealth v. White,* 229 Pa. Super. 280, 323 A.2d 757 (1974)). The court held that an examination of the circumstances revealed the appellant's repeated requests and rebuttals demonstrated that the appellant committed the crime of harassment. *Id.,* 239 Pa. Super. at 544, 363 A.2d at 806.

Also in *Commonwealth v. Evans,* 299 Pa. Super. 529, 445 A.2d 1255 (1982), the victim, who ran a social services program, met the appellant while he was attending the program. Late in the evening, the victim's doorbell rang and the victim answered it by using an intercom system. The appellant identified himself and began saying some offensive things, which included that the victim was having a sexual relationship with one of the clients. The victim called the police immediately and the appel-

lant was arrested. Additionally, the victim received numerous notes and letters containing appellant's signature and telephone number that were offensive as well.

The *Evans* court stated that the Commonwealth proved, beyond a reasonable doubt, the existence of the necessary elements of harassment, which are as follows:

"(1) intent to harass, annoy or alarm another person; (2) conduct which has 'no legitimate purpose'; and (3) conduct which alarms or seriously annoys the average person." *Id.,* 299 Pa. Super. at 535, 445 A.2d at 1258. Therefore, the trier of fact could reasonably find that the appellant's activities were intended to harass the victim without any legitimate purpose. *Id.*

In the current case, the defendant repeatedly made sexual advances towards A.M similar to the appellant in *Duncan.* Likewise, A.M. attempted to discourage the defendant by repeatedly rejecting his advances. When the defendant removed A.M.'s sock and informed her that he had a foot fetish, A.M. immediately pulled her foot away and went back into the residence. According to her testimony at the preliminary hearing, A.M. felt very uncomfortable because of the defendant's comments and actions. The *Duncan* case indicates that the criminal intent necessary to support the charge of harassment may be inferred from the words and actions of the defendant. Clearly, the defendant's repeated comments towards A.M. did not serve a legitimate purpose and communicated lewd, lascivious and obscene words. Therefore, the Commonwealth has presented sufficient evidence to establish that the defendant committed the crime of harassment.

Finally, the defendant is charged with corruption of minors, which is defined as "(1) Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age . . ." 18 Pa.C.S. §6301(a)(1). The court in *Commonwealth v. Proetto,* 771 A.2d 823 (Pa. Super. 2001), held that the Commonwealth presented sufficient evidence to support a conviction for corruption of minors where the appellant was over the age of 18 and he requested that the victim, who was under the age of 18, take photographs of herself nude and masturbating. The appellant also encouraged the victim to engage in a sexual relationship with him. The court determined that the acts of the appellant were clearly sufficient to establish that he committed the offense of corruption of minors. *Id.,* 771 A.2d at 834-35. It must be noted that it is not required that the victim actually suffer an injury to establish that the defendant committed corruption of minors. *Commonwealth v. Berry,* 355 Pa. Super. 243, 249, 513 A.2d 410, 413 (1986). Additionally, consent is not an element to this offense and whether the victim provided consent is not a consideration in determining if the defendant corrupted a minor. *Commonwealth v. Decker,* 698 A.2d 99, 100 (Pa. Super. 1997) (citing *Commonwealth v. Miller,* 441 Pa. Super. 320, 657 A.2d 946 (1995)).

Similar to the appellant's actions and requests in *Proetto,* the defendant in the current case asked A.M. several times to engage in sexual activities with him. First, the defendant asked A.M. to play the game "just the tip", which A.M. subsequently discovered meant that the defendant wanted her to perform oral sex. Additionally,

the defendant pulled up A.M.'s pant leg and asked her if he could have a taste. This was the defendant's way of asking A.M. if he could perform oral sex on her. Clearly, the defendant made comments, requests and actions that tend to corrupt the morals of a minor; therefore the Commonwealth has presented sufficient evidence to establish that the defendant committed the offense of corruption of minors.

For the reasons set forth in this opinion, the defendant's omnibus pretrial motion is denied.

## ORDER

Now June 21, 2010, this case being before the court on March 3 2010, for a hearing on the omnibus pretrial motion filed by the defendant, with both parties appearing, the Commonwealth of Pennsylvania, represented by counsel, Kathleen Fee-Baird, Esquire, assistant district attorney for the County of Lawrence and the defendant, Joshua Scott Sunday, represented by counsel, David H. Acker, Esquire and after a hearing held, and then both counsel requesting and being given the opportunity to submit briefs, and after a consideration of the testimony and briefs presented and submitted; by counsel, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) In accordance with the attached opinion, the omnibus pretrial motion filed by the defendant is hereby denied.

(2) The defendant shall be listed for the August 2010 criminal jury trial term.

(3) The clerk of courts is directed to serve a copy of this order of court upon counsel of record, Kathleen Fee-Baird, Esquire and David H. Acker, Esquire.