**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Joseph ZINGARELLI, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 16, 2003.

Filed Nov. 12, 2003.

Reargument Denied Jan. 26, 2004.

H. David Rothman, Pittsburgh, for appellant.

Barbara Claire Litten, Asst. Dist. Atty., Tionesta, for Com., appellee.

Before: LALLY–GREEN, TODD, and TAMILIA, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Joseph Zingarelli, Jr., appeals from the judgment of sentence entered on April 5, 2002, following his convictions for two counts of Criminal Attempt.[1] We affirm.

¶ 2 The trial court stated the facts as follows:

Appellant has filed this direct appeal to the judgment of sentence that followed a bench trial. In his Statement of Matters Complained Of he raises in general form the allegations of error relating to all this Court's Orders that favored the Commonwealth.[1]

---

[1] The Statement of Matters Complained Of On Appeal was filed on June 4, 2002

[1]. 18 Pa.C.S.A. § 901.

following the May 30, 2002 deadline. This Memorandum Opinion is correspondingly tardy.

While his stated issues are numerous, as they relate to the various Orders and procedural contexts from which the Orders arose, as a legal matter, Appellant contends that this Court erred in rejecting his proposition that his acts amounted only to preparation that falls short of the attempt crimes with which he was ultimately charged.

*Procedural Posture*

Appellant was charged with numerous offenses arising out of an internet sting operation. As a result of pretrial motions, this Court denied Appellant's motion to suppress the internet transcripts and quashed all but Counts 1 and 4 of the Information, which charged Appellant respectively with Attempted Statutory Sexual Assault and Attempted Involuntary Deviate Sexual Intercourse.[2]

---

[2] Counts charging "solicitation attempt/statutory sexual assault (Count 2), conspiracy/statutory sexual assault (3), attempt/IDSI (5), conspiracy/IDSI (6), unlawful contact or communication with a minor (7), and criminal use of communication facility (8) were quashed.

Order dated June 18, 2001. Following a telephone conference with counsel, the Court accepted Appellant's waiver of a jury trial in this matter, scheduled for October 16, 2001. Order dated September 14, 2001. Prior to the commencement of the trial, this Court ascertained that the Defendant had knowingly and voluntarily waived his right to a jury trial by giving the Defendant a full colloquy on the issue. N.T. 4–6. The Commonwealth moved for a continuance on October 11, 2001, citing health reasons prevented the arresting officer from testifying for a period of three

months. Because Appellant's expert witness was traveling from California, and the matter was to be heard without a jury, the District Attorney and counsel for Appellant agreed that the proceedings would take place out of sequence, with Appellant presenting his case on October 16, 2001. On that date, the Appellant's expert witness, Dr. Walch, and Appellant testified. The Commonwealth's portion of the case was scheduled for January 2002, but ultimately, and by stipulation, the Commonwealth presented its case by introducing into evidence an affidavit of the arresting officer and the transcripts of the internet communications between the officer and Appellant. The Commonwealth submitted a written closing argument; the Appellant submitted Proposed Findings of Fact and Conclusions of Law and Motion for Judgment of Acquittal and a Motion to Dismiss. Appellant's motions were denied by order dated March 5, 2002, and the Court rendered its verdict of guilty on both counts that day. Appellant was sentenced on April 5, 2002 to ten years probation, an administrative fee and costs.

On December 2, 2000, Trooper Richard A. Douthit, posing as a 15–year–old girl using the moniker "Kathy–PA," met Appellant in an internet chat room named "Father and daughter Sex." It is undisputed that the officer "entered" the chatroom and awaited a response. Appellant first approached the officer in a "private room" of the chat room. Affidavit of Tpr. Douthit 2:9–10; N.T. 131–32. Appellant chose to initiate a conversation with "Kathy–PA" because he "thought perhaps" that she was a Pennsylvania resident. N.T. 131. The officer determined that Appellant was using an internet service provider with a Pennsylvania address, judged Appellant likely to be a resident of Pennsylvania, and responded to Appellant. Affidavit at 2.

Four separate conversations ensued between the officer and Appellant. Their first, via internet communication in the "Father and Daughter Sex" chat room commenced at 7:35 p.m. and ended at 9:41 p.m., a period of two hours and six minutes.[3]

---

[3] Additionally, there is undisputed evidence that shortly before this conversation Appellant contacted the officer, but was disconnected. The officer did not save that communication because he did not anticipate further contact. Appellant testified that he indicated he was interested in "fantasy" in that communication and the officer, who does not recollect the specifics of that brief communication, does not dispute Appellant's recollection. Affidavit at 3.

The second communication consisted of a telephone call in which a woman trooper posing as "Kathy–PA" placed a brief telephone call to a number provided by Appellant in the first internet chat. The third communication consisted of a second internet conversation and occurred on Sunday, December 3rd from 3:23 p.m. to 3:50 p.m., lasting 27 minutes. The final communication, and the third internet conversation occurred later that day from 7:52 p.m. until 9:42 p.m., one hour and 50 minutes.

In these conversations, the officer posed as a 15–year–old girl looking for a man to teach her how to perform oral sex. Early in the first transcript, Appellant inquired: "do u still want to talk about sucking? It's kind of sexy," to which the officer replied "I am looking for a teacher not a pen pal." Appellant immediately responded: "u want to meet, then?" Exhibit A 1/9. The officer sent Appellant a picture and the two discussed the purported appearance of "Kathy–PA." Appellant changed the subject to inquire: "how far do u live

from Pittsburgh?" When the officer estimated two hours, Appellant stated: "that's not really far ... but do u really think you would let me teach u?" Exhibit A 2/9. They then discussed pragmatics of a meeting, with Appellant periodically interjecting comments about his state of arousal. After Appellant asked the officer if "she" will take her shirt off during their encounter, he stated: "wait. This is really risky ... can u telephone me? We should make sure that we are who we say we are." In the course of ensuing conversation, the officer requested that Appellant bring a bottle of wine to their meeting. They discussed what "Kathy–Pa" would be wearing, the renting of a motel room, and the timing of their meeting. They also discussed the mechanics of "Kathy–PA" placing a telephone call to Appellant. Exhibit A 4/9 to 8/9. The officer then sent another more seductive picture to Appellant. Exhibit A 5/9.

During their second internet conversation, Appellant evidenced his concern about the illegality of their proposed meeting. Exhibit B 1/4 ("I could get into a lot of trouble if we get busted;" "but if I get into trouble I could go to jail;" "a man can be arrested for meeting a minor for the purpose of sex"). Appellant concocted a plan to meet for a "date" because "they can't arrest me if I meet you for a date." Appellant indicated "I'll meet you there but I won't have rented a room for us. We'll go out first." Exhibit B 2/4.

The third internet conversation contained more of Appellant's concern about being apprehended. Appellant stated: "I want the same thing that you do. I just want it to appear that it's for something other than sex" and "my hesitance about getting the room is a practical precaution that's all." Exhibit C 2/9; Exhibit C 5/9.

On Sunday, December 4, 2000, at approximately 6:00 p.m., Appellant was apprehended in the parking lot of an ice cream stand in Tionesta, Forest County, Pennsylvania. Police found in his car a box of unopened condoms and in his pocket a key to an Eagle Rock Motel room. After obtaining a search warrant, police discovered a bottle of wine in Appellant's motel room. Appellant testified at trial that not only had he rented the room in advance of the appointed meeting time, he had also called the Eagle Rock Motel from his home in Mt. Lebanon to make a room reservation. N.T. 149: 15–19. A reverse phone directory search revealed the telephone number Appellant gave to the officer in the first internet chat was listed under the name of Appellant's wife; and the car Appellant was driving on December 3, 2000, was registered to him.

Trial Court Opinion, at 1–4.

¶ 3 On March 5, 2002, the trial court, sitting without a jury, found Appellant guilty of Criminal Attempt to Commit Statutory Sexual Assault and Criminal Attempt to Commit Involuntary Deviate Sexual Intercourse. On April 5, 2002, the trial court sentenced Appellant to ten years of probation and ordered him to pay the costs in the amount of $5,000.00 in lieu of a fine. The trial court also notified Appellant about his obligations pursuant to Megan's Law.[2] This timely appeal followed.

---

**2.** We note that the constitutionality of Megan's Law, 42 Pa.C.S.A. §§ 9791–9799.7, was recently considered by our Supreme Court. *Commonwealth v. Williams*, —— Pa. ——, 832 A.2d 962 (2003). However, the statute has not been declared unconstitutional. Moreover, Appellant does not challenge the application of Megan's Law in this appeal. Accordingly, we shall not address

¶ 4 Appellant presents three issues for our review on appeal:

I. In a Commonwealth sting operation on the internet, did Appellant engage in preparatory acts only, not amounting to criminal attempt to commit statutory sexual assault and involuntary deviate sexual intercourse?

II. Did the trial court err in ruling that Appellant was not entrapped as a matter of law or fact?

III. Did the trial court err in refusing to dismiss the prosecution under the provision of 18 Pa.C.S.A. Section 905(b) mitigation?

Appellant's Brief at 3.

¶ 5 First, Appellant argues that the evidence was insufficient to support his convictions for criminal attempt. Specifically, Appellant asserts that the evidence demonstrated his preparation to commit the crimes and not that he attempted to commit them.

¶ 6 We review a challenge to the sufficiency of the evidence under the following standard:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and incon-

clusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Vetrini,* 734 A.2d 404, 406–407 (Pa.Super.1999) (citations omitted).

¶ 7 The Crimes Code defines criminal attempt as follows:

(a) **Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S.A. § 901(a). The elements of criminal attempt are: (1) an intent to commit a specific crime; and (2) any act constituting a substantial step toward the commission of that crime. *Commonwealth v. Pasley,* 743 A.2d 521, 523 (Pa.Super.1999). "The substantial step test broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before the actual commission of the crime." *Commonwealth v. Gilliam,* 273 Pa.Super. 586, 417 A.2d 1203, 1205 (1980). The defendant need not actually be in the process of the crime when arrested in order to be guilty of criminal attempt. *Id.*

whether Appellant's responsibilities under Megan's Law may be imposed.

¶ 8 Accordingly, the Commonwealth was required to prove that Appellant had intent to commit statutory sexual assault and involuntary deviate sexual intercourse and that Appellant committed an act constituting a substantial step towards the commissions of those crimes.

 ¶ 9 The crime of involuntary deviate sexual intercourse is defined as follows:

(a) **Offense defined.**—A person commits a felony of the first degree when he or she engaged in deviate sexual intercourse with a complainant:

. . .

(7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S.A. 3123(a)(7). The crime of involuntary deviate sexual intercourse occurs when the actor, by physical compulsion or threats thereof, coerces the victim to engage in acts of anal and/or oral intercourse. *Commonwealth v. Poindexter*, 435 Pa.Super. 509, 646 A.2d 1211, 1215 (1994).

¶ 10 The crime of statutory sexual assault is defined as follows:

Except as provided in section 3121 (relating to rape), a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3122.1. The Crimes Code defines "sexual intercourse" as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus with some penetration however slight; emission is not required." 18 Pa.C.S.A. § 3101.

¶ 11 The trial court found Appellant guilty of involuntary deviate sexual inter-course and statutory sexual assault. Trial Court Opinion, 6/27/02, at 6. Specifically, the trial court held that Appellant committed several substantial steps towards commission of the crimes, including making a hotel reservation pursuant to his conversation with "Kathy–PA," driving two and one half hours to the arranged meeting site at the arranged time, and purchasing wine and condoms. *Id.*

¶ 12 Our review of the record reflects the following. Appellant was 44 years old at the time of trial on October 16, 2001. N.T., 10/16/01, at 99. Appellant engaged in a internet chat room conversation with someone he believed to be a 15–year–old girl from Pennsylvania. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit A, at 2 and 5. The young girl, identified as Kathy–PA, was actually Corporal Douthit of the Pennsylvania State Police. *See,* Affidavit of Corporal Richard A. Douthit, at 1–2. During the course of the conversation, Kathy–PA indicated that she wished to learn how to perform oral sex. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit A, at 1. Appellant asked Kathy–PA whether she would like to meet him. *Id.* Appellant asked Kathy–PA whether she would let him teach her how to perform oral sex. *Id.* at 2. Appellant arranged with Kathy–PA to meet at a motel in Tionesta, Pennsylvania. *Id.* at 2–3.

¶ 13 During the next internet conversation with Kathy–PA, Appellant confirmed that Kathy–PA was only 15 years old. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit B, at 1. Appellant discussed with Kathy–PA his concern about the illegality of meeting a minor for the purpose of sex. *Id.* This concern was raised again in Appellant's next conversation with Kathy–PA. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit C, at 2. Appellant asked Kathy–PA to meet him the next day but requested that she assist

him in making the meeting appear to be for something other than sex. *Id.* Appellant finalized his plans to meet Kathy–PA. *Id.* at 6. Appellant arranged to meet Kathy–PA at 6:00 p.m. in the parking lot of an ice cream store across the street from a motel. *Id.* at 3 and 6. Appellant wrote, "[you] know what we both want, [sic] it's just a question of making it happen." *Id.* at 5.

¶ 14 The next day, December 4, 2000, at approximately 6:00 p.m., Appellant arrived at the ice cream store. *See,* Affidavit of Corporal Richard A. Douthit, at 5. Appellant possessed a key to a motel room, and there was an unopened box of condoms inside his car. *Id.* A search of the motel room revealed an overnight bag and a bottle of wine. *Id.*

¶ 15 The evidence is sufficient to support Appellant's convictions for criminal attempt to commit statutory sexual assault. First, Appellant knew that Kathy–PA was only 15 years old and that, of course, Appellant was more than four years older than she. Second, Appellant intended to engage in sexual intercourse *per os* with Kathy–PA. Therefore, Appellant intended to commit the crime of statutory sexual assault.

¶ 16 Similarly, the evidence is sufficient to support Appellant's conviction for criminal attempt to commit involuntary deviate sexual intercourse. First, Appellant was aware that Kathy–PA was less than 16 years old and that he was more than four years older than she. Second, Appellant intended to engage in oral intercourse with Kathy–PA. Therefore, Appellant intended to commit the crime of involuntary deviate sexual intercourse.

¶ 17 Appellant argues, however, that he did not do any act which constitutes a substantial step toward the commission of either crime. We disagree. Appellant had rented a motel room, pur-chased wine and condoms, packed an overnight bag, and driven from Pittsburgh to Tionesta in order to meet Kathy–PA for the purpose of sexual intercourse. All that was necessary was for Kathy–PA to appear, which of course would not happen. Nevertheless, Appellant did not need to be arrested in the process of the crime in order to be guilty of criminal attempt. *Gilliam.* Accordingly, the evidence is sufficient to support Appellant's convictions for criminal attempt to commit statutory sexual assault and criminal attempt to commit involuntary deviate sexual intercourse.

¶ 18 Appellant argues that the evidence merely shows his preparedness, not acts constituting a substantial step. Appellant asserts that this Court's decision in *Commonwealth v. Willard,* 179 Pa.Super. 368, 116 A.2d 751 (1955), supports this position. The trial court found that *Willard* is distinguished from the instant case. Trial Court Opinion, 6/27/02, at 5–6.

¶ 19 The trial court correctly found that *Willard* is distinguishable. In *Willard,* the defendant was convicted of attempt to commit abortion. *Willard,* 116 A.2d at 752. The statute under which the defendant was convicted did "not make the actual abortion the crime, but instead [set] forth the acts which constitute an attempt to produce an abortion and makes this mere attempt the crime." *Id.* This Court held that the defendant did not commit any of the acts outlined in the statute, but rather that the defendant had only prepared to commit the acts which constitute attempt to commit abortion. *Id.* at 753. The Court applied the definition of attempt as "an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it." *Id. Willard* is distinguishable for two reasons. First, in *Wil-*

*lard,* the crime charged specified what acts constitute attempt. Second, the definition of attempt as used in *Willard* is different than the elements of criminal attempt in § 903. Therefore, *Willard* does not support Appellant's argument that he had merely prepared and had not criminally attempted to commit the crimes. This claim fails.

¶ 20 Appellant further asserts that he should not have been convicted for preparing to commit a crime because there would have been substantial time to renounce up until the moment the crime is actually committed. Renunciation is a defense to criminal attempt and provides as follows:

(c) Renunciation.—

(1) In any prosecution for an attempt to commit a crime, it is a defense that under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant avoided the commission of the crime attempted by abandoning his criminal effort and, if the mere abandonment was insufficient to accomplish such avoidance, by taking further affirmative steps which prevented the commission thereof.

18 Pa.C.S.A. § 901(c).

¶ 21 Appellant's argument misconstrues the defense of renunciation. The paragraph permits a defendant charged with criminal attempt to assert the defense of renunciation. Renunciation requires a showing that the defendant avoided the commission of the crime attempted by abandoning his criminal effort. While the Crimes Code provides that it *is* a defense if the defendant renounces his criminal effort, the Crimes Code does *not* provide that it is a defense if the opportunity to renounce has not yet expired. As Appellant does not allege that he in fact renounced his criminal effort, he may not

invoke the defense of renunciation under Section 901(c). This claim fails.

¶ 22 Appellant also argues that public policy should eliminate the use of "sting" operations as an investigative tool to apprehend suspects. Appellant cites two civil cases which bear no relation to the instant action to support his assertion that this Court should invoke public policy to eliminate sting operations. According to Appellant, such operations are too likely to ensnare innocent individuals. We decline to hold that sting operations violate public policy. As demonstrated by the instant case, the sting operation ensnared exactly who it should, an adult who wished to engage oral sex with a minor. Absent a developed challenge to the propriety of sting operations, this Court will not invoke public policy to eliminate them. This claim fails.

¶ 23 In his second issue, Appellant asserts that the trial court erred by concluding that Appellant was not entrapped. Specifically, Appellant asserts that he is an internet sex addict and relies upon this Court's decision in *Commonwealth v. Lucci,* 443 Pa.Super. 431, 662 A.2d 1 (1995), to support his argument that the police investigation is the equivalent to luring an addict to commit crimes where he otherwise would not.

¶ 24 The Crimes Code defines the defense of entrapment as follows:

(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to entrapment.

18 Pa.C.S.A. § 313(a) and (b).

¶ 25 Pennsylvania courts apply the objective test to determine whether a defendant has been entrapped. This Court has stated the following with regard to the objective test for entrapment:

> ...Section 313 adopts the objective approach to entrapment which is new to Pennsylvania law. The old Pennsylvania law required that the defendant be an otherwise innocent person until the police or their agent, through creative activity, planted the idea to commit a crime in his mind and induced him to do so. Crimes Code § 313 and Model Penal Code § 2.13 follow the minority view of the United States Supreme Court as articulated by Justice Frankfurter in his concurring opinion to *Sherman v. United States* [, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).] This view—the objective approach—conceives the entrapment defense as aimed at deterring police wrongdoing. The defense provides a sanction for overzealous and reprehensible police behavior comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.
>
> . . .
>
> Thus, the test for entrapment has shifted in emphasis from a consideration of a particular defendant's readiness to commit crime, a subjective test, to an evaluation of the police conduct, an objective test, to determine whether there is a substantial risk that the offense will be committed by those innocently disposed. To determine whether an entrapment has been perpetrated in any particular case, therefore, the inquiry will focus on the conduct of the police and will not be concerned with the defendant's prior criminal activity or other indicia of a predisposition to commit crime.

*Lucci,* 662 A.2d at 3 (citations omitted).

¶ 26 Where the police conduct regarding obtaining evidence of a crime rises to the level of outrageousness, the conduct will support a finding of entrapment as a matter of law. *Lucci,* 662 A.2d at 7. In *Lucci,* the defendant had just returned from voluntary drug rehabilitation two weeks before being approached by a confidential informant. The confidential informant was a former, very close friend of the defendant and had brought undercover narcotics agents to meet the defendant, introducing them as co-workers. The confidential informant appealed to the defendant's sympathy as a former close friend, cited the death of his mother as the need for his support of the defendant, and asked the defendant to purchase drugs for him despite his knowledge that the defendant had recently recovered from his drug addiction. This Court held that the actions of the confidential informant, as an agent of the police, were so egregious as to constitute entrapment as a matter of law. This Court relied upon numerous factors, stating:

> ...based upon the controverted testimony at trial on the operative facts of this case, [the defendant] was entrapped as a matter of law where: 1) a former very close friend; 2) appealing to the bonds of friendship and the sympathy engen-

dered by the alleged impending death of his mother; 3) and claiming that he, himself, had been through rehabilitation and was now "clean[";] 4) approached [the defendant] repeatedly about selling drugs in exchange for which [the defendant] could have a "free high"; 5) all the while knowing that [the defendant] was just out of rehabilitation and that his family was doing everything in its power to help him remain drug-free.

*Id.* at 8. Accordingly, this Court vacated the defendant's judgment of sentence.

¶ 27 The trial court found that Appellant had not been entrapped. Trial Court Opinion, 6/27/02, at 9. Specifically, the trial court found that the police actions would not make a reasonable person feel compelled to commit the crimes charged. *Id.*

¶ 28 Our review of the record reflects the following. Appellant testified that he sent a message in an internet chat room to Kathy–PA asking her if she would be interested in a "dad and daughter sex fantasy." N.T., 10/16/01, at 131. Appellant testified that he chose to send a message to Kathy–PA thinking that Kathy could be from Pennsylvania. *Id.* at 131–132. Appellant testified that it occurred to him that he was addicted to the internet. *Id.* at 143–144. However, Appellant also testified that he never sought treatment. *Id.* at 55. Appellant testified that he drove two and one half hours to Tionesta and that during the drive it occurred to him that what he was doing was stupid and he thought about turning around and going home. *Id.* at 146. Appellant testified that although he did not anticipate using a condom during oral sex, he was not sure what situations would present themselves. *Id.* at 148. Appellant testified that he wanted to meet Kathy–PA and also wanted oral sex. *Id.* at 167.

¶ 29 Corporal Douthit stated in his affidavit that he entered an internet chat room under the name Kathy–PA and waited to be approached. Affidavit of Corporal Richard A. Douthit, at 1. Appellant initiated a conversation with Kathy–PA. *Id.* at 2. After verifying that Appellant was located in Pennsylvania, Corporal Douthit responded to Appellant's message. *Id.* Corporal Douthit, as Kathy–PA, engaged in three separate internet conversations with Appellant, as set forth in the exhibits attached to his affidavit.

¶ 30 During the conversation, Appellant asked Kathy–PA whether she still wanted to discuss oral sex. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit A, at 1. Kathy–PA responded that she wished for someone to instruct her on how to perform oral sex and did not simply wish to discuss it over the internet. *Id.* Appellant immediately responded by asking Kathy–PA if she wished to meet. *Id.* After discussing Kathy–PA's appearance, Appellant asked her if she lived far from Pittsburgh. *Id.* Kathy–PA wrote that she lived between Pittsburgh and Erie. *Id.* at 2. Appellant immediately responded that the distance was not far but asked Kathy–PA whether she would actually let Appellant "teach" her. *Id.* Corporal Douthit submitted a photograph to Appellant, allegedly of Kathy–PA, which depicted an attractive young woman. *Id.* at 5. The remainder of the conversation set forth in Exhibit A details the formation of a plan for Kathy–PA and Appellant to meet. *Id.* at 2–9.

¶ 31 The next conversation between Appellant and Kathy–PA centered on Appellant's concern over the illegality of the impending sexual encounter. *See,* Affidavit of Corporal Richard A. Douthit, Exhibit B, at 1–4. In Appellant's final conversation with Kathy–PA, Appellant asked her to meet him but instructed her, "just don't say its for sex, that's all." *See,* Affidavit of Corporal Richard A. Douthit, Exhibit C, at 2. Kathy–PA expressed her concern that

Appellant would not instruct her on how to perform oral sex and wrote that it would be easier to learn by watching a pornographic film. *Id.* Appellant responded by writing "[I] want the same thing that you do. [I] just want it to appear that it's for something other than sex." *Id.* The remainder of the conversation finalized the details of the meeting between Kathy–PA and Appellant. *Id.* at 2–9.

¶ 32 The conduct of the police was not so egregious as to constitute entrapment as a matter of law. Corporal Douthit entered the chat room but did not initiate contact with Appellant. While posing as Kathy–PA, Corporal Douthit did indicate that a mere discussion about oral sex would be insufficient, Appellant immediately and without prompting by Corporal Douthit suggested a meeting between the two. Corporal Douthit merely provided Appellant with a perceived opportunity to turn Appellant's fantasy into reality. Further, Corporal Douthit did not attempt to overcome Appellant's will by submitting photographs of Kathy–PA. Appellant had not changed his mind about participating in oral sex with Kathy–PA and then the photographs were submitted to lure Appellant back. The conduct of Corporal Douthit does not rise to a level of outrageousness to justify finding entrapment as a matter of law.

¶ 33 Furthermore, the instant case is distinguished from *Lucci.* In *Lucci,* this Court was concerned about the Commonwealth's personal, manipulative tactics to draw someone they knew to be a rehabilitated drug addict back into his former life of addiction. Rather than merely providing an opportunity for the defendant to carry on with his drug use, the Commonwealth had gone to great lengths and doggedly played upon extremely personal and emotional connections to obtain evidence from the defendant. Here, Appellant is not a rehabilitated addict. Corporal Douthit did not play upon personal and emotional connections, nor did he persist with his ruse in order to sway Appellant. When Appellant expressed concern over the illegality of the rendezvous, Corporal Douthit, as Kathy–PA, indicated that she would simply call the whole thing off. Rather than demonstrating outrageous and egregious behavior, Corporal Douthit merely provided Appellant with a perceived opportunity, which Appellant readily seized. Appellant himself testified that as he was driving to Tionesta, he considered turning back. This Court can hardly view Corporal Douthit's actions as those likely to induce an innocent man to commit the crime when Appellant himself considered abandoning his criminal plans. Accordingly, Corporal Douthit did not engage in outrageous or egregious behavior warranting a finding of entrapment as a matter of law. Therefore, the trial court did not err by rejecting Appellant's entrapment defense. This claim fails.

¶ 34 In Appellant's final issue he argues that the trial court erred by failing to dismiss his convictions pursuant to 18 Pa.C.S.A. § 905(b). Specifically, Appellant asserts that since the trial court did not find that Appellant presented a danger to the public, the trial court should have dismissed the prosecution.

¶ 35 This issue is waived. Pursuant to Pa.R.A.P.1925(b), an appellant must file a Concise Statement of Matters Complained of on Appeal when ordered to do so by the trial court. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998). Failure to timely file the requested statement renders all issues waived. *Commonwealth v. Overby,* 744 A.2d 797 (Pa.Super.2000). Where an untimely filed Concise Statement is addressed by the trial court in its opinion, the issues are preserved for appellate review, because

the purpose of Pa.R.A.P.1925(b) is served. *Commonwealth v. Ortiz*, 745 A.2d 662, 663–664 n. 3 (Pa.Super.2000).

¶ 36 In the instant case, the trial court ordered Appellant to file a Concise Statement by May 30, 2002. Appellant did not file his Concise Statement until June 4, 2002. Therefore, Appellant's Concise Statement was untimely. Nevertheless, the trial court addressed the issues regarding the sufficiency of the evidence for two counts of criminal attempt and Appellant's issue regarding entrapment. Thus, those issues are preserved. *Ortiz*. However, the trial court did not address Appellant's issue regarding dismissal pursuant to 18 Pa.C.S.A. § 905(b). Therefore, the purpose of Pa.R.A.P.1925(b) has not been served. Thus, the issue is waived.

¶ 37 Judgment of sentence affirmed.