J-A12044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KENNETH MABIE | : | |
| | : | |
| Appellant | : | No. 1315 MDA 2020 |

Appeal from the Judgment of Sentence Entered September 1, 2020
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-SA-0000007-2020

BEFORE: LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED: AUGUST 19, 2021**

Kenneth Mabie ("Mabie") appeals from the judgment of sentence imposed following his convictions of three counts of harassment.[1] We affirm.

On September 4, 2019, Patrick Kochel ("Kochel") and Michael Bracken ("Bracken"), employees of Wohlsen Construction Company ("Wohlsen"), were performing construction work in a narrow alleyway between two buildings near the corner of South Queen and Farnam Streets in Lancaster City. Kochel and Bracken were mixing, pouring, and spreading concrete in the alleyway and adjoining sidewalk on behalf of the Lancaster Early Education Center ("LEEC"). LEEC was one of the adjoining landowners, and had hired Wohlsen to perform the work.

---

[1] 18 Pa.C.S.A. § 2709(a)(1), (3).

As Kochel and Bracken were completing the work at approximately 12:00 p.m., Mabie approached the scene, recording with his camera. Mabie first approached Kochel as he was spreading concrete in the alleyway, and accused Kochel of trespassing. Additionally, Mabie informed Kochel that he was violating a court order related to a property dispute between the two adjoining landowners. Mabie then stepped in the freshly-poured concrete. Mabie left the alleyway and approached Bracken, who was mixing concrete in a wheelbarrow on the adjacent sidewalk. Mabie accused Bracken of covering up a survey marker, and attempted to film Bracken with his camera. Bracken pushed Mabie's camera away with his hand. Mabie then informed the men that he was calling the police and that he would be pressing charges against Bracken for touching Mabie's camera. Mabie represented that he was a journalist on public property, and asserted that Bracken had touched him. As Mabie continued to question the workers, he again stepped in the freshly-poured concrete.

As the confrontation continued, Hendricks Jackson ("Jackson"), an electrician who was performing unrelated maintenance work at LEEC, approached the scene. Jackson told Mabie to give Kochel and Bracken room to finish their work. Mabie responded that he did not need to give Kochel and Bracken room, as he was on a public sidewalk. Mabie told Jackson that Bracken had "put hands on him," and Mabie called Jackson a "motherfucker." Jackson then tried to move Mabie out of Kochel and Bracken's way, and Mabie

and Jackson both pushed each other. Mabie continued to call Jackson a "motherfucker," and the two men briefly wrestled, trading punches and elbows. Police arrived shortly thereafter, and Mabie was eventually charged with, *inter alia*, the above-referenced offenses.[2]

Mabie was convicted of the above-referenced charges after a hearing before a magisterial district judge, and was sentenced to pay a $200 fine for each conviction, in addition to costs and restitution. Mabie appealed his summary convictions to the trial court, which conducted a *de novo* hearing on September 1, 2020. At the conclusion of the hearing, the trial court convicted Mabie of all charges, and imposed sentences of fines, costs, and restitution. Mabie filed a timely Notice of Appeal, and a court-ordered 1925(b) Concise Statement of matters complained of on appeal.

Mabie asserts the following issue for our review:

Did the trial court erroneously find [] Mabie guilty of three counts of harassment[,] where evidence presented by the Commonwealth was insufficient to prove [] Mabie guilty of the offense[s] beyond a reasonable doubt?

Brief for Appellant at 5.

Mabie argues that the Commonwealth presented insufficient evidence to convict him of each count of harassment. *Id.* at 10-13. Regarding his two convictions pursuant to subsection 2709(a)(3), Mabie asserts that he had a

---

[2] Mabie was charged with the two counts under subsection 2709(a)(3) related to his interactions with Kochel and Bracken, and under subsection (a)(1) related to his interaction with Jackson.

legitimate purpose in his interactions with Kochel and Bracken, as he was acting as an independent journalist and, in filming the Wohlsen workers, he intended only to document what he believed to be a violation of a court order. *Id.* at 11-12. Additionally, Mabie claims that upholding his convictions on the grounds that his journalistic endeavors were not a legitimate purpose would have a chilling effect on his First Amendment rights. *Id.* at 12.

Regarding his harassment conviction under subsection 2709(a)(1), Mabie argues that he was acting in self-defense, and that Jackson was the aggressor during the incident. *Id.* at 12-13. Mabie asserts that the trial court's finding that Mabie's conduct was aggressive and pointless is not enough to show that he had the intent to harass, annoy or alarm the victims. *Id.*

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).  Further, absent an abuse of discretion, a reviewing court will not reverse a trial court's determination of credibility.  *Commonwealth v. Hughes*, 908 A.2d 924, 928 (Pa. Super. 2006) (citing *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1069 (Pa. Super. 2003)).  Appellate courts will find that a trial court has abused its discretion if, "in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will."  *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016).

The Crimes Code, in relevant part, provides as follows:

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

> (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; [or]
>
> * * *
>
> (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]

18 Pa.C.S.A. § 2709(a)(1), (3).  "An intent to harass may be inferred from the totality of the circumstances."  *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa. Super. 2002).  "Because 'course of conduct' means a pattern of actions composed of more than one act over a period of time evidencing a continuity of conduct, a single act will not support a conviction."  *Commonwealth v. Battaglia*, 725 A.2d 192, 194 (Pa. Super. 1999).

- 5 -

With respect to Mabie's convictions under section 2709(a)(3), Kochel testified that as he was spreading concrete, Mabie blocked his exit from the narrow alleyway as Mabie questioned him. N.T., 9/1/20, at 10. Kochel testified that Mabie stepped in the concrete enough times that Kochel "had to rework the entire area that [Mabie] was in." *Id.* at 11. Kochel testified that Mabie's presence on the scene was annoying, made the job more difficult, and that Mabie was "giving [him] a hard time for no reason." *Id.* at 14. Further, Kochel testified that he had previously encountered Mabie on the scene, as he was working, on "a regular weekly basis," and that Mabie was verbally aggressive and rude during their previous encounters. *Id.* at 8-9. Kochel also explained that he had a congenial working relationship with LEEC's neighboring property owner, and was not aware of a court order that would have precluded him from performing the work at that location. *Id.* at 18.

Bracken testified that he, too, had previously encountered Mabie at the site. *Id.* at 21. Bracken testified that, in the instant incident, Mabie was "badgering" Bracken and Kochel, and that Bracken was uncomfortable and annoyed with how close Mabie had gotten to him while filming. *Id.* at 22. Bracken testified that Mabie stepped in the newly-poured concrete, and that Bracken and Kochel had to spend two or three additional hours repairing the damage that Mabie had caused. *Id.* at 23.

We conclude that the evidence presented by the Commonwealth at trial was sufficient to convict Mabie of harassment pursuant to section 2709(a)(3).[3] The evidence of record demonstrated that Mabie was the aggressor throughout the encounter with all three men. Mabie had established a pattern of being present at the construction scene and being aggressive towards Kochel and Bracken. Mabie's actions of blocking Kochel's exit, placing his camera in Bracken's face, repeatedly questioning Kochel and Bracken, accusing them of trespassing, and intentionally damaging concrete work that Kochel and Bracken had completed, were sufficient to demonstrate an intent to harass or annoy Kochel and Bracken. *See Battaglia*, *supra*; *Lutes*, *supra*.

Further, the record supports the trial court's finding that Mabie's "claims of his presence at the scene to be in furtherance of some vague assignment as an independent journalist to be not credible." Trial Court Opinion, 11/16/20, at 3; N.T., 9/1/20, at 73-74 (wherein the trial court indicates that no evidence was presented at trial to indicate that Mabie was a credentialed journalist or that he had previously published articles regarding Wohlsen or

_____

[3] In addition to the testimony presented at trial, we also have reviewed the video evidence presented at trial, which includes Mabie's video recording, as well as video surveillance obtained from two other properties. *See* Commonwealth's Exhibit 1; N.T., 9/1/20, at 58 (wherein Commonwealth's Exhibit 1 was admitted into evidence).

LEEC); *see also Hughes*, *supra*.[4] Accordingly, because Mabie engaged in a course of conduct with the intent to harass without a legitimate purpose, the evidence was sufficient to convict him of each citation under section 2709(a)(3).

With respect to Mabie's conviction pursuant to section 2709(a)(1), Jackson testified that he had not personally seen Mabie prior to the date in question, but that he was aware of "issues" related to Mabie's repeated presence at the construction site. N.T., 9/1/20, at 29. Jackson testified that as he went to his truck to get something, he noticed Mabie with his camera confronting Bracken and Kochel. *Id.* at 30. Jackson testified that Mabie confronted him as soon as Jackson approached the scene, questioning whether Jackson worked for Wohlsen too. *Id.* Jackson testified that Mabie intruded into his "personal space" in an aggressive manner. *Id.* at 33. Jackson further indicated that after Mabie had approached him, they pushed each other; Mabie tried to grab at Jackson's shirt; and Mabie tried to lift Jackson off of the ground. *Id.* at 32-36. Jackson explained that he recently had back surgery and was wearing a back brace, and felt particularly troubled by Mabie attempting to lift him off of the ground. *Id.* at 36-37. Additionally,

---

[4] At trial, Maybe failed to provide evidence of any court order prohibiting Wohlsen employees from completing work in the alleyway. N.T., 9/1/20, at 73 (wherein the trial court stated that "no evidence [was] presented to this [c]ourt of a court order, or that [a court order] was ever presented to anyone at the time").

Jackson testified that Mabie had grabbed Jackson's thumb, pushing it back as if to break it. *Id.* at 37.

We conclude that the Commonwealth presented sufficient evidence to support Mabie's conviction under section 2709(a)(1), as Jackson testified that Mabie subjected him to physical contact. *See* 18 Pa.C.S.A. § 2709(a)(1). With respect to Mabie's claim that he was acting in self-defense, both the testimony and the video evidence establish that Mabie was the aggressor throughout the encounter, including in the physical altercation with Jackson, during which Mabie aggressively entered Jackson's personal space and provoked Jackson to defend himself. *See Commonwealth v. Jones*, 332 A.2d 464, 466 (Pa. Super. 1974) (stating that an individual raising a self-defense claim must be "free from fault in provoking or continuing difficulty"). Accordingly, we conclude that Mabie is not entitled to relief on his claim, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/19/2021