J-S14014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CLAYTON LEROY KNORR | : | |
| | : | |
| Appellant | : | No. 1213 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 7, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0003694-2021

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:  **FILED: AUGUST 9, 2024**

Clayton Leroy Knorr appeals from the judgment of sentence,[1] entered

in the Court of Common Pleas of Luzerne County, following his convictions of

one count each of criminal attempt to commit retaliation against witness,

---

[1] Knorr's notice of appeal states that his appeal is "from the [s]entencing [o]rder of [c]ourt[,] dated March 7, 2023, the petition for writ of habeas corpus filed on May 19, 2022, the hearing for the writ of habeas corpus on June 10, 2022, [] the order denying the writ of habeas corpus[,] dated June 15, 2022, the trial that was held between January 9, 2023 to January 11, 2023, [and the] post-sentence motion filed on April 4, 2023, which was denied by [o]rder of [c]ourt[,] dated July 31, 2023." Notice of Appeal, 8/29/23. We note that Knorr's notice of appeal properly lies only from his judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (appeal properly lies from judgment of sentence in criminal action). We have amended the caption accordingly.

victim, or party[2] and possession with intent to deliver a controlled substance

(PWID).[3]  After careful review, we affirm.

The trial court set forth the facts of this case as follows:

This matter arises from an amended information[4] filed by the
Luzerne County District Attorney against [] Knorr, on January 6,
2023[, charging Knorr with] criminal attempt to commit criminal
homicide,[5] criminal attempt to commit retaliation against
witness, victim or party, criminal solicitation to commit criminal
homicide[,][6] and [PWID].

On August 17, 2021, [Knorr] was found guilty of violating a
temporary protection from abuse [(PFA)] order which had been
entered on behalf of the mother of his child, [M.S.], on May 24,
2021.  [Knorr] was sentenced to two months['] probation as a
result of the violation.  On September 1, 2021, [Knorr] was
charged with violating a final [PFA] order which had been entered
in favor of [M.S.] on August 17, 2021.  [The court scheduled a]
hearing on the violation of the final order [for] September 23,
2021.

A few days prior to the September 23, 2021 hearing, [Knorr]
began speaking with a friend, Joann Graph, regarding his fear that
he would be going to jail and may lose custody of his child
[(Child)].  [Knorr] did not want [M.S.] to attend the hearing and
he discussed injecting [M.S.] with heroin so it would look like an
overdose when she crashed her car into a tree.  [Knorr] also told
[] Graph he wanted [M.S.] gone, he just wanted her dead, and he
wanted her out of here.

_____

[2] 18 Pa.C.S.A. § 4953; *id.* at § 901(a).

[3] 35 P.S. § 780-113(a)(30) (fentanyl).

[4] The Commonwealth filed an original information December 13, 2021.

[5] 18 Pa.C.S.A. § 2501(a); *id.* at § 901(a).

[6] *Id.* at § 2501(a); *id.* at § 902(a).

[Knorr] asked [] Graph to obtain something to put [M.S.] out. [] Graph declined to obtain anything. [Knorr] eventually told [] Graph he w[ould procure] a concoction to give to [M.S.]. [Knorr] believed [M.S.] would meet with him if he offered to take her to dinner and give her a debit card [with access to several thousand dollars] and the title to a vehicle. [] Graph contacted the Pennsylvania State Police and consented to the placement of a [video and audio] recording device in her residence. This device recorded a conversation on September 21, 2021, between [Knorr] and [] Graph[,] during which they discussed [Knorr]'s plan to ensure that [M.S.] would not attend the [final PFA] violation hearing two days later.

Ultimately, [M.S.] was directed to meet [Knorr] at a park and ride near the town of Ashley[,] in Luzerne County[,] on September 22, 2021. [That day, a]fter [Knorr] exited his vehicle and attempted to enter the vehicle occupied by [M.S.], [police arrested Knorr and located] a glass vial containing a mixture of heroin, fentanyl, cocaine, xylazine and trazadone [] in [Knorr's] right front pocket. [This encounter] occurred one day prior to the hearing on [Knorr's final PFA] order violation.

[Knorr] entered a plea of not guilty [to the charges in this case] and proceeded to a jury trial. On January 11, 2023, the jury [found Knorr guilty] of [the above-mentioned crimes and] found [Knorr] not guilty of the attempt and the solicitation to commit criminal homicide.

[The court s]entenc[ed Knorr] on March 7, 2023[, to] 30 to 60 months[' incarceration] on [Knorr's attempted] retaliation conviction[,] and 33 to 66 months[' incarceration] consecutive [to that sentence] on [Knorr's PWID] conviction. . . . [Knorr] received [a] credit [of] 532 days . . .

On March 15, 2023, [Knorr] filed a motion to extend the time period to file post-sentence motions[, which the court] granted[,] permit[ting Knorr] to file post[-]sentence motions on or before April 4, 2023.

Trial Court Opinion, 10/24/23, at 1-3 (unpaginated).

On April 4, 2023, Knorr filed his post-sentence motion, seeking judgment of acquittal and a new trial. On July 31, 2023, the court denied

Knorr's post-sentence motion. Knorr filed a timely notice of appeal on August 29, 2023.[7] Knorr and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Knorr raises the following issues for our review:

1. Whether the Commonwealth presented sufficient evidence to sustain the verdict for [attempted] retaliation against witness[?]

2. Whether the Commonwealth presented sufficient evidence to sustain the verdict for [PWID?]

Appellant's Brief, at 1 (unnecessary capitalization omitted; reordered to reflect order presented in appellant's brief). Knorr is not entitled to any relief.

Our standard of review for challenges to the sufficiency of the evidence is well-settled:

A claim challenging the [sufficiency of the] evidence is a question of law. Evidence [is] sufficient to support the verdict when it establishes each material element of the crime charged[,] and the commission thereof by the accused, beyond a reasonable doubt. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner[,]

_____

[7] Generally, the appellant must file a notice of appeal within thirty days of the entry of the order in question. *See, e.g.*, *Commonwealth v. Moir*, 766 A.2d 1253, 1254 (Pa. Super. 2000). Further, if an appellant files a timely post-sentence motion, the notice of appeal must be filed within thirty days of the entry of the order deciding the motion. *See* Pa.R.Crim.P. 720(A)(2)(a). Typically, a post-sentence motion must be filed within ten days of sentencing. *See* Pa.R.Crim.P. 720(A)(1). However, in *Commonwealth v. Horst*, 481 A.2d 677 (Pa. Super. 1984), this Court held that under the previous version of Rule 720, the court may extend the time for filing post-sentence motions where there was a motion for extension of time to file such motions, filed within the 10-day period following imposition of sentence. *See Horst*, 481 A.2d at 678. Here, Knorr filed a motion for extension of time within 10 days of the entry of his judgment of sentence and filed his post-sentence motion within the extended time permitted by the trial court, thus his appeal is timely.

giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Nevels*, 203 A.3d 229, 241 (Pa. Super. 2019) (citation and ellipsis omitted). We consider all evidence admitted at trial in making this determination. *See id.* Further,

> [t]he Commonwealth may sustain its burden of proving every element [of the crime charged] beyond a reasonable doubt by means of wholly circumstantial evidence. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility[,] nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014) (citations and quotation marks omitted). Indeed,

> the trier of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part[,] or none of the evidence. . . . [but] cannot base a conviction on conjecture and speculation[,] and a verdict which is premised on suspicion will fail[,] even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275-76 (Pa. Super. 2014) (citation omitted).

"[A] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step towards the commission of that crime." *Nevels*, 203 A.3d at 241, quoting 18 Pa.C.S.A. § 901(a) (quotation marks omitted). The substantial step analysis emphasizes what "the defendant has done" and not "the acts remaining to be done before

the actual commission of the crime." ***Commonwealth v. Zingarelli***, 839 A.2d 1064, 1069 (Pa. Super. 2003) (citation and quotation marks omitted). The crime need not be in process when the defendant is arrested to convict the defendant of criminal attempt. ***See id.***

Retaliation against a witness, victim, or party is defined in section 4953 of the Pennsylvania Crimes Code, which provides:

> **(a) Offense defined.** -- A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim[,] or a party in a civil matter.

18 Pa.C.S.A. § 4953(a); ***see also Nevels***, 203 A.3d at 243. Our Supreme Court has clarified that, assuming an intent to retaliate, "the Commonwealth can sustain its burden by proving any one of the following three scenarios: (1) that the defendant harmed another by any unlawful act; or (2) that the defendant engaged in a course of conduct which threatened another; or (3) that the defendant repeatedly committed acts which threaten[ed] another." ***Commonwealth v. Ostrosky***, 909 A.2d 1224, 1228 (Pa. 2006).

The definition of a "course of conduct" is a "pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes threatening or obscene words or actions." ***Commonwealth v. Salinas***, 307 A.3d 790, 793-94 (Pa. Super.

2023) (ellipses and brackets omitted), quoting 18 Pa.C.S.A. § 2709(f);[8] **see also Commonwealth v. Tedesco**, 550 A.2d 796, 799-800 (Pa. Super. 1988) (course of conduct is more than isolated verbal or physical act and is pattern of conduct composed of same or similar acts repeated over period of time, however short, establishing continuity of purpose).  Multiple threats are necessary to satisfy the requirements of the retaliation statute.  **See Ostrosky**, 909 A.2d at 1232-33.

To sustain a conviction for PWID, "the Commonwealth must establish the defendant knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to manufacture, distribute, or deliver it."  **Commonwealth v. Dix**, 207 A.3d 383, 390 (Pa. Super. 2019), citing 35 P.S. § 780-113(a)(30).  To prove the defendant's *mens rea* regarding delivery, in addition to the quantity of the controlled substance, other factors to consider include the way the controlled substance was packaged, the defendant's behavior, the presence of drug paraphernalia and large sums of cash, and expert testimony establishing intent.  **See Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237-38 (Pa. 2007); **see also Commonwealth v. Bricker**, 882 A.2d 1008, 1015 (Pa. Super. 2005) (setting

---

[8] There is no definition of "course of conduct" in section 4953 of the Pennsylvania Crimes Code.  Nevertheless, we may apply the definition of "course of conduct" located within section 2709 and we find it applies with equal force to section 4953(a), insofar as both sections use that term, specifically requiring a course of conduct that is supported by multiple acts. **See Commonwealth v. Kelly**, 102 A.3d 1025, 1031-32 (Pa. Super. 2014) (applying definition of "course of conduct" from section 2709 to section 6301).

forth factors to consider in determining whether drugs were possessed with intent to deliver, including, *inter alia*, packaging method, drug form, and defendant's behavior). "Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use." ***Commonwealth v. Jackson***, 645 A.2d 1366, 1368 (Pa. Super. 1994) (citations and quotation marks omitted).

First, Knorr argues the evidence was insufficient to convict him of attempted retaliation against a witness where the Commonwealth failed to establish Knorr retaliated, or took a substantial step toward retaliating against M.S., in response to M.S.'s testimony in the August 17, 2021 PFA proceeding. Instead of being motivated by a retaliatory purpose, Knorr contends that his purpose was prospective, "[i]n essence, it was to prevent [M.S.] from testifying at the hearing on September 23, 2021." Appellant's Brief, at 9.[9] The trial court agreed with Knorr when it issued its Rule 1925(a) opinion, recommending this Court vacate Knorr's conviction for attempted retaliation due to a lack of evidence in the record demonstrating any plan to retaliate for M.S.'s past acts because the only evidence of record related to the yet-to-be-held September 23, 2021 hearing. ***See*** Trial Court Opinion, 10/24/23, at 5 (unpaginated). We disagree and find that the evidence adduced by the

---

[9] Knorr appears to concede that his actions would have been sufficient to convict him of attempted obstruction of justice if the Commonwealth had charged Knorr with this crime. ***See*** 18 Pa.C.S.A. § 5101.

Commonwealth at trial was, in fact, sufficient to sustain Knorr's conviction for attempted retaliation against a witness.

At trial, the Commonwealth introduced the following documentary exhibits, without objection: (1) M.S.'s PFA petition filed against Knorr, on behalf of her and Child, on June 1, 2021; (2) the certified transcript of the August 17, 2021 hearing, held before the Honorable David Lupas, relating to M.S.'s June 1, 2021 PFA petition, which included M.S.'s testimony against Knorr; (3) Judge Lupas' order related to M.S.'s allegation that Knorr violated a temporary PFA order on or about June 13, 2021; (4) reciprocal final PFA orders between Knorr and M.S., entered by agreement, following the August 17, 2021 hearing; and (5) a continuance order, issued by the Honorable William Amesbury, dated September 9, 2021, continuing until September 23, 2021, at 10:00 a.m., a hearing on an alleged violation of the August 17, 2021 PFA order in favor of M.S. and against Knorr, at the request of the Commonwealth. *See* N.T. Trial, 1/9/23-1/11/23, at 310-15; *see also* Commonwealth Exhibits 9-13. Further, Graph testified that, based on her previous conversations with Knorr, she was aware that Knorr hated M.S. and wanted M.S. dead. *See* N.T. Trial, *supra*, at 49 (Graph testifying Knorr told her "I want [M.S.] gone. I just want [M.S.] dead. I want [M.S.] out of here."); *id.* at 67 (Graph testifying Knorr was agitated and stated, "I'm getting rid of [M.S.]."); *id.* at 82-83 (Graph testifying she and Knorr did not need to use word "kill" to understand substance of their conversation). Moreover, the Commonwealth introduced evidence that Knorr feared that he would be

incarcerated and would lose custody of Child if M.S. testified at the September 23, 2021 hearing. *See id.* at 163, 198-99.

Although the record does not explicitly contain direct testimony that it was Knorr's intent to retaliate against M.S., the jury could reasonably draw that inference, *see Nevels*, 203 A.3d at 241, based on the circumstances and the evidence of record. *See Vogelsong*, 90 A.3d at 719. Specifically, the record contained evidence that M.S. had filed a PFA petition against Knorr and had testified in support of that petition as a witness. There was abundant evidence that Knorr disliked M.S., and blamed M.S. for his issues in the PFA court, to the point Knorr wanted to harm M.S. and wanted her dead. Further, the Commonwealth established that Knorr did not want to be incarcerated or lose custody of Child, and, although these were only prospective potential consequences of the yet-to-be-held September 23, 2021 hearing, the jury could reasonably infer Knorr's retaliatory purpose for facing these consequences, based on the timing of the August 17, 2021 and September 23, 2021 hearings, and the timing and nature of Knorr's actions and statements—i.e., Knorr faced these potential consequences only because M.S. filed a PFA petition against him and testified against him at the previous PFA hearing. *See Nevels*, 203 A.3d at 241 (evidence sufficient to sustain conviction for retaliation against witness because appellant knew that victims had cooperated in case against his co-defendant cousin, victims had testified in grand jury proceeding against him, and victims were scheduled to testify at subsequent murder trial). Further, expert testimony by forensic toxicologist

- 10 -

Michael Koyer, Ph.D., established that the quantity and potency of the fentanyl contained within the vial that Knorr possessed was potentially a lethal dose. N.T. Trial, **supra**, at 298, 300. Upon our review, we are satisfied that the record reflects that, over a period of several days, Knorr engaged in a threatening course of conduct, **see Salinas**, **supra**; **Tedesco**, **supra**, with a discernible singular and continuous purpose—to drug M.S. with a harmful, and potentially lethal, mixture of drugs, because of M.S.'s prior PFA filings and witness testimony—sufficient to sustain Knorr's conviction for retaliating against a witness. **See Ostrosky**, **supra**; 18 Pa.C.S.A. § 4953(a).

As to the element of attempt, Trooper Kevin Hibson testified that while in possession of the mixture of drugs, Knorr tried to open the door to M.S.'s vehicle at the predetermined meeting location and time. **See** N.T. Trial, **supra**, at 156. Knorr possessed the vial containing the concoction of drugs, including a potentially lethal dose of fentanyl, which Knorr stated to Graph on a prior occasion he wanted to give to M.S. so he could be rid of M.S., while trying to enter M.S.'s vehicle. **See Zingarelli**, **supra**. We conclude that Knorr's actions under these circumstances constitute a substantial step toward the commission of the crime of retaliating against a witness. **See** 18 Pa.C.S.A. § 901(a); **see also Commonwealth v. Jacob**, 867 A.2d 614, 619 (Pa. Super. 2005) (sufficient evidence to establish substantial step toward commission of crime where appellant pursued internet conversations with person he believed to be 12-year-old girl; introduced sexual topics; arranged meeting with her and gave accurate physical description of himself and automobile; and

appeared on time at agreed location); ***Commonwealth v. Jackson***, 301 A.3d 884, at *10 (Pa. Super. June 7, 2023) (Table) (appellant committed substantial step toward committing crime when, after told by rightful occupants at 2 a.m. to leave premises, appellant jiggled victim's door handle for two seconds, from which trier of fact could infer appellant trying to open door).[10]   Accordingly, Knorr is not entitled to any relief on his first issue on appeal. ***See Nevels***, ***supra***; ***Vogelsong***, ***supra***; ***Slocum***, ***supra***.

Second, Knorr argues the evidence is insufficient to sustain his conviction for PWID because "the Commonwealth failed to present [] evidence that [Knorr] had an intent to deliver those drugs to [M.S.] because [M.S.] was unaware of his plans, and thus could not accept delivery."  Appellant's Brief, at 10.  Knorr is not entitled to relief on this claim either.

Here, we note that, contrary to Knorr's claims, it is not M.S.'s intent that is relevant, but rather, Knorr's. ***See Dix***, ***supra***.  Indeed, we find the evidence was sufficient to convict Knorr of PWID, considering the circumstances, including that:  (1) the vial discovered on Knorr's person at the time of his arrest contained fentanyl, heroin, cocaine, xylazine, and trazodone; (2) the fentanyl was in a quantity and had a potency sufficient to be lethal; (3) police did not discover any paraphernalia indicating Knorr's personal use; (4) police arrested Knorr at the predetermined meeting location he had with M.S.; and (5) Knorr tried to enter M.S.'s vehicle while possessing the vial containing the

---

[10] ***See*** Pa.R.A.P. 126(a)-(b) (unpublished non-precedential opinions of this Court filed after May 1, 2019, may be cited for persuasive value).

concoction of drugs that he previously stated he wanted to give to M.S. so he could be rid of M.S. or put her to sleep. *See Ratsamy*, *supra*; *Bricker*, *supra*. Also, Dr. Koyer provided expert testimony that, in his 21 years as a forensic toxicologist, during which time he has evaluated a minimum of over 4,000 cases, he has never encountered the specific mixture of drugs in the vial recovered from Knorr's person, and such a concoction of these specific drugs was uncommon, from which the jury could infer the drug concoction was not for Knorr's personal use. *See* N.T. Trial, *supra*, at 292-93, 300; *see also Jackson*, 645 A.2d at 1368. We conclude that these factors and circumstances are sufficient to sustain Knorr's conviction for PWID. *See Dix*, *supra*. Therefore, Knorr is not entitled to any relief on his second issue on appeal. *See Nevels*, *supra*; *Vogelsong*, *supra*; *Slocum*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/09/2024